T. C. SHOVE v. E. J. MARTINE.[1]

December 13, 1901.

Nos. 12,806—(108).

**Promissory Note—Verdict Sustained by Evidence.**

In an action brought upon promissory notes, wherein the defense alleged was a valid agreement to indorse upon one of said notes a certain sum of money, it is *held* that the verdict, in effect sustaining this defense, was supported by the evidence.

**Assignments of Error.**

Certain assignments of error relating to rulings of the court during the trial considered and disposed of.

Action in the district court for Redwood county to recover $1,195, and interest, upon two promissory notes. The case was tried before Webber, J., and a jury, which rendered a verdict in favor of plaintiff for $163.63. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Pierce & Harriott,* for appellant.

*Bowers & Howard* and *Somerville & Olsen,* for respondent.

COLLINS, J.

To justify an affirmance of the order appealed from, it is only necessary to state the salient features of the case as they appeared at the trial, as follows: Prior to September, 1896, one Kyle and the defendant's husband were engaged in the mercantile business at Cottonwood, Minnesota, as copartners. They were also selling goods on commission for a number of manufacturers and whole-sale houses. This was, in fact, a part of their business as copartners. Some disagreement having arisen, negotiations were entered into by them looking toward a dissolution and to a settlement of all copartnership affairs. An attorney by the name of McMahon was employed by Kyle, who resided in Ramsey county, to go to Cottonwood for the purpose of aiding and bringing about this settlement. McMahon made two or more trips, and at last made

1 Reported in 88 N. W. 254, 412.

a sale of Kyle's interest in the mercantile business to Mrs. Martine, this defendant. The value of Kyle's interest was agreed upon and fixed at $2,070, and thereupon Mr. and Mrs. Martine made two notes,—one for $1,000, and one for $1,070,—both payable to Kyle's order, one of which (the $1,000 note) has been paid. Another note for $125 was made later to correct an error which had been discovered in the meantime. The two notes last mentioned are the ones sued upon in this action, the plaintiff, Shove, having become the owner thereof after maturity.

The complaint was in the ordinary form. One of the makers (Mr. Martine) died before the commencement of this action. It was alleged in defendant's answer that at the time of the sale it was agreed between Kyle and Mr. Martine that there was due to them as commissions on account of goods sold for manufacturers and wholesale houses something over $2,000, of which $1,700 was good and collectible (Martine and Kyle being equal owners of these claims); that it was then agreed between the Martines and Mc-Mahon (the latter representing Kyle) that these commissions were to be collected by McMahon before January 1, 1897; that Martine's share, when so collected, should be indorsed by McMahon upon the note for $1,070; that for the purpose of carrying out this agreement it was stipulated, before the notes were made, that the one last mentioned should be kept by the latter, as the agent of both parties, until the proper indorsements were made on the note, when the money should be turned over to Kyle; that it was expressly agreed that the note should not be delivered to Kyle until the commission accounts were collected and the indorsements made; that any balance due on this note was to be paid by this defendant, and the note, together with a more or less formal memorandum of these commission accounts, then turned over to McMahon to be taken by him to his Minneapolis office for the purposes above stated.

The answer further alleged that subsequently Kyle found fault with some interference on the part of Martine with the collection of these commission accounts; that he went to McMahon's office, and there proposed to take all of these accounts as his own; that he then authorized McMahon to indorse $850 (that amount being

one-half of the sum due upon the collectible commission accounts) upon the note for $1,070, and to advise Martine of this proposition; that McMahon then, and in writing, informed Martine of Kyle's offer; that Martine immediately visited Minneapolis, and verbally agreed with McMahon that Kyle should collect all sums due on the accounts, and in consideration thereof the Martines should immediately receive a credit and indorsement of $850 on the $1,070 note; that McMahon then informed Kyle of this acceptance by the Martines, and turned over to him the memorandum before referred to and all other matters connected with the commission accounts; that the $850 agreed upon was never indorsed upon the note, because, when McMahon undertook to make the indorsement, he found that in some unknown manner, and without his consent, the note had been taken out of his possession. The reply put these allegations in issue. The answer also alleged and set up a counterclaim for $276, and in the reply this counterclaim was admitted, so that the real controversy at the trial was over the agreement in respect to the collection of the commissions and the indorsement of $850 on the note. On this issue the jury found for the defendant, returning a verdict for the full amount of both notes, less the amount of the counterclaim and the $850.

McMahon and the defendant both testified to the agreement made at the time the notes were delivered to the former, and McMahon testified to the subsequent conversation wherein Kyle proposed that the commission accounts should be collected by him; that he should retain all the money so collected; and, if this was consented to by the Martines, and in consideration of such consent, he (McMahon) was authorized and directed to indorse the sum of $850 on the note. McMahon also testified that he informed the Martines of this proposition by letter; that they accepted and agreed to it; that he informed Kyle of this acceptance and agreement, and then delivered into his hands the memorandum of the accounts. He also testified as to the disappearance of the note without his consent, and without the indorsement agreed upon As a witness for plaintiff, Kyle contradicted McMahon in every essential. The issue between these persons on these matters was very clearly made, but the jury passed upon the evidence, and, it

seems, believed McMahon's version of the transaction. It was for the jury to determine where the truth lay as between these witnesses, and it is unnecessary for us to go further than to say that apparently the testimony in behalf of defendant was entitled to credit, and it was certainly sufficient to support the verdict.

It is contended by the plaintiff's counsel that, in order to satisfy the statute of frauds, the value of the commission accounts being more than $50, it was necessary that there should be a formal assignment, in writing, of Martine's interest therein. It is not quite clear from the evidence whether it was agreed that Kyle should become the owner of Martine's interest in the accounts, or should merely collect the amounts due, retaining all the money himself, the consideration therefor being the indorsement upon the note; but it is unnecessary to decide exactly what the agreement was, for in this state it is settled that a valid transfer of accounts of the same character as these, and under the circumstances here presented, may be made by parol, without regard to the amount involved. Hurley v. Bendel, 67 Minn. 41, 69 N. W. 477.

It is also contended that the court erred in permitting McMahon to testify as to this transaction, because he was Kyle's attorney, and the whole matter was privileged; but an examination of the testimony will show that the former was acting for both parties, that they confided the custody of the note and the memorandum to him as their mutual agent, and, furthermore, that he was sent by Kyle to interview the Martines in respect to a settlement of their copartnership matters. The parties could agree that Kyle's attorney, McMahon, might represent both, and the former could not claim privilege as to matters relating to the mutual agency. If Kyle chose to authorize McMahon to act for him in the transaction of business with the Martines, what was said and done was not privileged. Communications made to an attorney and intended to be imparted to the other party are not of that character. Hanson v. Bean, 51 Minn. 546, 53 N. W. 871.

It is also contended by counsel that the verbal testimony received at the trial as to an agreement in reference to the commission accounts varied, contradicted, and modified a bill of sale which was executed by Kyle at the time Mrs. Martine purchased

his interest in the mercantile business, and also the note itself. The bill of sale contained nothing whatsoever regarding these accounts, and did not purport to convey them, or to authorize their collection by either Kyle or McMahon. The bill of sale was not varied, contradicted, or departed from in any way by this testimony. The conditions under which the note was delivered to McMahon could undoubtedly be shown by parol without infringing upon the rule. Smith v. Mussetter, 58 Minn. 159, 59 N. W. 995.

There is no merit in the tenth assignment of error, for the answer to the question therein referred to was inadmissible under the pleadings. The answer alleged that Kyle had taken the accounts, and had directed that a credit be given upon the note. This was denied in the reply. There was no allegation of a contract made under a mutual mistake as to the amounts due as commissions, under which allegation it could be shown that Kyle attempted to make the collections, and was unable to do so because nothing was due. Again, it was immaterial what steps were taken by Kyle in respect to these accounts. For a good consideration he had agreed (according to the verdict) that $850 should be indorsed upon the note, and he was bound by this agreement whether or not he attempted to or could collect the accounts. The contract entered into with the Martines was valid and enforceable without regard to what transpired in the future. That was wholly immaterial. See Hanley v. Noyes, 35 Minn. 174, 28 N. W. 189.

No further discussion of the assignments of error seems necessary.

Order affirmed.

An application for a rehearing having been made, the following opinion was filed December 27, 1901:

PER CURIAM.

Upon a petition for rehearing plaintiff's attorneys present several reasons why, in their opinion, the petition should be granted. Of these but one needs comment, and that arises out of the statement in the opinion that in this state it has been settled that a valid transfer of an account may be made by parol, without regard

85 M.—3

to the amount involved; citing Hurley v. Bendel, 67 Minn. 41, 69 N. W. 477.

On re-examination of that case and the authorities cited, we are not confident that it was properly decided, and therefore. say that the question will be regarded as an open one, to be hereafter determined, if occasion requires. But in the present case, as stated in the former opinion, it is not clear from the evidence whether the agreement was that Kyle should become the owner of Martine's interest in the accounts, or should simply collect the same, retaining for himself all of the money. This being the state of the evidence, it becomes immaterial whether a valid transfer was made. If Kyle was to collect simply, no transfer was contemplated or needed.

Petition denied.